## HUDSON RIVERKEEPER FUND, INC., Plaintiff,

v.

YORKTOWN HEIGHTS SEWER DISTRICT, Town of Yorktown, Aaron Bock, Town Supervisor, Allen Chadwick, Assistant Town Supervisor, and Daniel Ciarcia, Plant Engineer, Defendants.

95 Civ. 8749 (JSR).

United States District Court, S.D. New York.

Dec. 27, 1996.

Robert F. Kennedy, Jr., Pace Environmental Litigation Clinic, White Plains, NY, for Plaintiff.

Michael Grace, Grace & Grace, Yorktown Heights, NY, for Defendants.

### MEMORANDUM ORDER

RAKOFF, District Judge.

Plaintiff, an environmental organization, brought this citizen suit under § 505 of the Clean Water Act, 33 U.S.C. § 1365, alleging that defendants had failed to contain pollutant discharges from their wastewater treatment plant within permissible limits, thereby adding to contamination of the Hallocks Mill Brook, the Muscoot River and Reservoir, and the New Croton Reservoir. Following discovery, defendants moved for summary judgment on the ground that plaintiff lacked standing to sue, and plaintiff cross-moved for partial summary judgment on liability and for preliminary injunctive relief. After hearing oral argument on November 4, 1996, the Court telephonically advised the parties on November 8, 1996 that it had denied defendants' motion for summary judgment, granted plaintiff's motion for partial summary judgment, and denied plaintiff's motion for a preliminary injunction, with written opinion to follow. Trial of the remaining disputed issues was set for December 30, 1996.

On December 20, 1996, however, the parties executed a written Consent Judgment settling the case (subject to Justice Department approvals expected to be obtained by February, 1997). Accordingly, it is no longer necessary to issue such detailed written analysis as might be necessary to facilitate appellate scrutiny. But as courts may not rule by fiat, so parties are entitled to know the reasons for a court's rulings. Accordingly, this memorandum will briefly set forth the most salient considerations that informed the Court's determinations.

■ The issue of standing raised by defendants' motion is not without difficulty. There is no question that defendants' wastewater treatment plant has repeatedly discharged pollutants in excess of limits set by applicable state permits; but the extent of the offending efflux appears minimal, thus raising a question as to whether any person other than the state can claim injury in fact. In support of its claim of standing, plaintiff offers the opinion of its expert, Dr. Bruce A. Bell, that the respects in which the discharges from defendants' wastewater treatment plant have exceeded permissible limits "have caused potential harm to the environment" (Bell Aff. ¶ 18), including potential direct harm to trout life and potential indirect harm to New York City drinking water (id. at ¶¶ 19–27). Dr. Bell is careful, however, not to aver more than potential harm. Plaintiff also offers the affidavit of its president, Robert H. Boyle, who regularly fishes in the affected waters, averring that he is "offended by the possibility that the discharges are negatively affecting the quality of these waters" (Boyle Aff. ¶ 14); the affidavit of one of its directors, Anne Hearst, averring that because of her "fear" that New York City water is contaminated, she is "forced to buy bottled water" (Hearst Aff. ¶ 10); the affidavit of another director, David Fell, averring that because of similar "fear" he now filters the tap water in his home, takes showers instead of baths, and "rarely order[s] tea in restaurants in New York City anymore"

(Fell Aff. ¶¶ 5–7); and the affidavit of one of plaintiff's members, Robert B. Hodes, who also regularly fishes in the affected waters, averring that "the fishing has deteriorated markedly, particularly over the past five years" (Hodes Aff. ¶ 5).

From these submissions, it is clear that many of plaintiff's claims to standing are premised on conjecture and surmise, raising doubts as to whether plaintiff has shown the "sufficient stake" and "injury in fact" that entitle a party to obtain judicial resolution of an otherwise justiciable controversy. *See Sierra Club v. Morton,* 405 U.S. 727, 732–33, 92 S.Ct. 1361, 1364–65, 31 L.Ed.2d 636 (1972). This is not to say that past or present injury must be proven; threatened injury may be sufficient to confer standing, *see Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66 (1979). But the threat must be "imminent, not conjectural." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). Likewise, while an "injury to aesthetic and environmental well being" is sufficient in appropriate circumstances to confer standing, *see Sierra Club v. SCM Corp.,* 747 F.2d 99, 104 (2d Cir.1984), "offense" taken at the mere "possibility" of contamination is insufficient to support standing at the summary judgment stage. *See Lujan v. National Wildlife Federation,* 497 U.S. 871, 889, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990).

Nonetheless, it cannot be forgotten that Congress, in affording the statutory right to sue under the Clean Water Act to any "person or persons having an interest which is or may be affected" by, *inter alia,* any violation of any state order setting an effluent standard or limitation, *see* 33 U.S.C. § 1365, seemingly intended to confer standing on as broad a range of affected persons as is consistent with the dictates of Article III of the Constitution. Against this background, the Second Circuit in *Friends Of the Earth v. Consolidated Rail Corp.,* 768 F.2d 57 (1985)—a case involving similar permit violations—found adequate evidence of standing in affidavits only slightly less vague and conclusory than the affidavits submitted here. *See Friends of the Earth,* 768 F.2d at 61.

Indeed, at least one of the affiants here, Mr. Hodes, arguably makes out a better case for actual injury than the affiants in *Friends of the Earth,* for he avers that he is a regular trout fisherman in the waters into which the defendants' pollutants are directly discharged and that the fishing has steadily worsened over the period of these discharges (*see* Hodes Aff. ¶¶ 3–6). When this is coupled with Dr. Bell's averments that the excess discharges are particularly toxic to trout (*see* Bell Aff. ¶¶ 19–26), adequate evidence has been offered to avoid summary judgment for lack of standing.

Turning to plaintiff's motions, however, the Court takes note that "injury" for purposes of standing does not necessarily correspond to the kind of "irreparable injury" required for preliminary injunctive relief. While defendants do not contest plaintiff's allegation that the quantities of contaminants discharged from the Yorktown facility regularly exceed legally permissible limits—thereby entitling plaintiff to partial summary judgment on the issue of liability—they strenuously dispute whether this efflux, which they characterize as minimal, has had a material environmental impact. In the absence of harder proof of real and immediate injury, plaintiff fails to qualify for preliminary injunctive relief.

For the foregoing reasons, the Court hereby confirms its prior telephonic orders denying defendants' motion for summary judgment on standing, granting plaintiff's motion for partial summary judgment on liability, and denying plaintiff's motion for a preliminary injunction. In view of the parties' submission of their executed stipulation of settlement, the trial of this case, previously scheduled for December 30, 1996, is adjourned *sine die* in contemplation of dismissal of the action in February, 1997 upon notification of the appropriate approvals by the Department of Justice.

SO ORDERED.